COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






MARK ANTHONY LUJAN,

                            Appellant,

V.

THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 §

 §


No. 08-09-00250-CR

Appeal from the
 
Criminal District Court No. 1

of El Paso County, Texas 

(TC# 20030D01615) 





O P I N I O N

            Mark Anthony Lujan appeals the district court’s order revoking community supervision and
adjudicating him guilty of possession of marijuana, greater than fifty but less than or equal to two
thousand pounds. On appeal, Appellant complains that the district court lacked jurisdiction to
adjudicate his guilt, that it erred in refusing to allow any witnesses to testify on his behalf at the
punishment phase, and that its failure to enter findings of fact and conclusions of law requires
reversal. For the reasons that follow, we affirm.
 
FACTUAL SUMMARY
            Pursuant to a plea agreement, Appellant entered a guilty plea before the 34th District Impact
Court of El Paso County, Texas, to the second-degree felony offense of possession of marijuana,
greater than fifty but less than or equal to two thousand pounds. The court assessed punishment at
community supervision for a term of ten years and a $2,000 fine, but deferred further proceedings
without entering an adjudication of guilt. In December 2003, the State filed a motion to revoke
community supervision and adjudicate guilt. In an amended motion to adjudicate guilt, the State
alleged that Appellant committed murder in November 2003 in New Mexico, as well as other acts
which violated the conditions of his community supervision. Appellant responded by filing a motion
to quash and a motion to dismiss. The presiding judge of Criminal District Court No. 1 of El Paso
County conducted a hearing in June 2009. At that point, the State abandoned all allegations except
for the allegation that Appellant committed murder during his community supervision period. 
Appellant pled true to the allegation. The district court entered judgment adjudicating guilt and
sentenced Appellant to twenty years’ incarceration. Appellant then requested findings of fact and
conclusions of law and filed a motion for new trial. Although the court held a hearing on the motion
for new trial, it did not enter an order and the motion was overruled by operation of law. See Tex.
R. App. P. 21.8(a), (b), (c). This appeal follows.
JURISDICTION
            We begin with Issue Two, because whether the court below had jurisdiction over the
controversy is a threshold question. See State v. Roberts, 940 S.W.2d 655, 657 n.2 (Tex.Crim.App.
1996). Appellant contends that Criminal District Court No. 1 lacked jurisdiction because the
underlying criminal prosecution occurred in the 34th District Impact Court. Article 42.12, Section
5(b), of the Code of Criminal Procedure authorizes a trial court to revoke a defendant’s deferred
adjudication community supervision and adjudicate his guilt on the original charge if the State
proved by a preponderance of the evidence that the defendant violated any condition of his
community supervision. Tex.Code Crim.Proc.Ann. art. 42.12, § 5(b)(Vernon Supp. 2010); Rickels
v. State, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006). Section 10(a) of this article provides in part: 
“Only the court in which the defendant was tried may grant community supervision, impose
conditions, revoke the community supervision, or discharge the defendant, unless the judge has
transferred jurisdiction of the case to another court with the latter’s consent.” Tex.Code
Crim.Proc.Ann. art. 42.12, § 10(a)(Vernon Supp. 2010).
            Appellant argues that the Impact Court never transferred his case to Criminal District Court
No. 1, and that there were no agreements between the courts to exchange benches. In the absence
of evidence demonstrating that the cases from the Impact Court were transferred to Criminal District
Court No. 1, he continues, the latter court lacked jurisdiction to adjudicate his guilt.
            Under the Texas Government Code, district court judges in multi-court counties may transfer
any civil or criminal matters on their docket to another district court in the same county, and the
judges may exchange benches or districts at their discretion, from time to time. Tex.Gov’t Code
Ann. § 24.303(a)(Vernon 2004); see Davila v. State, 651 S.W.2d 797, 799 (Tex.Crim.App. 1983). 
It is unnecessary that a formal order be entered for the judge of one district court to preside over a
case in place of a duly elected judge. Davila, 651 S.W.2d at 799.
            The facts here are a bit more complicated. We first explain the creation of Criminal District
Court No. 1, as was recited on the record by the trial judge below:
[Q]uite a few years ago the El Paso Council of Judges established an Impact Court



to handle primarily drug cases. . . . And then about a year and a half ago the
legislature created a new district court in El Paso called the El Paso County Criminal
District Court No. 1, which is what we are right now. And it’s my understanding that
the El Paso County Council of Judges at that time decided to cease having an Impact
Court and have all those cases transferred to this court, the Criminal District Court
No. 1. And so there is no longer any Impact Court.

Because the Impact Court was not legislatively created, the presiding judge was not an elected
official. Instead, a visiting or retired judge would be assigned by the Regional Presiding Judge for
the Sixth District, who is Judge Steve Ables from Kerrville.


 Compounding the confusion is that
the duly elected judge of Criminal District Court No. 1 has been removed from office because of a
criminal conviction in federal court. Judge Ables then appointed the Honorable Peter S. Peca, Jr.
to serve as the presiding judge until the next election. Judge Peca is a seasoned and respected jurist
having served as the presiding judge of the 171st District Court and County Court at Law No. 7, both
of which are elected positions.
            Appellant entered his guilty plea in the Impact Court, which subsequently imposed
community supervision on him and deferred further proceedings without entering an adjudication
of guilt. After the State filed its amended motion to adjudicate guilt on October 20, 2008, all
subsequent pleadings were filed in the Criminal District Court No. 1 which eventually adjudicated
Appellant guilty and sentenced him to twenty years’ incarceration. We conclude that Judge Peca was
not precluded from revoking Appellant’s community supervision and that Criminal District Court
No. 1 had jurisdiction to adjudicate Appellant’s guilt. See Tex.Gov’t Code Ann. § 24.303(a). 
Accordingly, we overrule Issue Two.
DENIAL OF DUE PROCESS
            In the first part of Issue One, Appellant complains that Judge Peca erred in failing to allow
him the opportunity to have witnesses testify on his behalf in mitigation of the punishment. He
contends that the error constitutes a violation of the Due Process Clause of the Fourteenth
Amendment of the United States Constitution, art. 1, Section 10 of the Texas Constitution, and art.
42.12, § 5(b) of the Texas Code of Criminal Procedure.
The State of the Record
            At the beginning of the revocation proceeding, defense counsel urged an oral motion for
continuance to secure witnesses from New Mexico to testify in mitigation of punishment. He then
advised Judge Peca that he did have one witness present in the hallway:
Counsel:Mr. Lujan does have witnesses on the punishment stage of the
proceeding. And that we would have at least --
 
The Court:What does that person going to be -- what are they going to be
testifying to?
 
Counsel:They’re going to be testifying as to his character. One, the
person’s going to be testifying -- he’s going to be testifying
that he’s going to be on parole in New Mexico and that he has
a job. That he’s going to be working. He’s going to be
complying with parole requirements. That he’s not a flight
risk. That he would not be leaving. That he did his time five
and a half years where he did not have any problems in the
prison system. So that this person -- so that this Court can
actually look at the proper punishment in this case, and we’re
asking that he’s -- his probation be reinstated so that he can
complete his probation.


After Appellant entered his plea, the court inquired as to the availability of witnesses:
The Court:Do you have witnesses here?
 
Counsel:I have one person that came in, Judge. And, again, we’ll ask
the Court to postpone the punishment to get all our witnesses
here.
 
The Court:No. Do you have a witness here today?
 
Counsel:Yeah, I have a witness. 

Judge Peca found the allegations in the motion to revoke to be true and adjudicated Appellant guilty
of the underlying offense of possession. He then announced that he was, “going to proceed with the
question of punishment.” The State called one witness, the uncle of the New Mexico murder victim,
who testified over Appellant’s repeated objection. At the end of the testimony, the witness was
excused, and the following occurred:
All right. At this time the Court is going to go ahead and I’m going to overrule your
motion for a continuance on this matter.
 
The Court’s of the opinion it doesn’t want to hear any more evidence of this case and
the Court’s going to go ahead and pronounce sentence. And I’m going to sentence
Mr. Lujan to 20 years with credit for time served. That’ll be it. The Court’s in
recess.

It appears from the record that Judge Peca left the bench quickly. Appellant argues that he did not
have time to object. While the judge was leaving the courtroom, the prosecutor asked if the victim’s
mother could give a victim impact statement, to which Judge Peca replied, “No. This is not a murder
trial.” Defense counsel, apparently simultaneously, added, “We would object to that, Judge.”
            The State maintains that Appellant has waived error because he did not specifically ask at
the “punishment phase” to call the one witness who was present, nor did he object to the trial court’s
hasty adjournment. Ordinarily we would agree. But the reporter’s record from the hearing on
Appellant’s motion for new trial reveals much more about the circumstances of the revocation
hearing. Defense counsel reminded the court that one witness who was present had not been allowed
to testify and he then urged Judge Peca to reconsider the twenty year sentence. Judge Peca
responded:
The Court:The -- the Court felt it was being abused at that time because
the case had been set for a long time for that hearing. We
came in here for the hearing. The defendant then said they
wanted to have a continuance to bring witnesses in. The State
was opposing the continuance because they had already
brought witnesses in from out of town, and so I decided to
deny that motion for continuance and proceed with the
hearing.
 
Then into the hearing, the Court finds that the witnesses the
State has brought in from who knows where really don’t have
any information that’s relevant to the Court on this particular
matter. So at that point in time, and based on the position
where the defendant has already pled true, the Court’s going
to find the allegations to be true. It’s pretty obvious they are
true. He’s been in New Mexico. He’s got over five years
credit that the Court’s going to give him, and the Court did
hear your proffer then and heard your proffer now.

* * * * *
 
Mr. Fernandez-Gonzalez, I considered everything you said. 
I assumed that those witnesses were going to come here and
say exactly what you said, and the Court’s in the position of,
what’s the proper sentence in this particular case?

* * * * *
 
And it turns out that he’s already done enough time that he’s
already eligible for parole in Texas on this case. All right. So
I’m expecting he’s just going to go down there and get
paroled.

Counsel again suggested that the defense witnesses might change the court’s opinion:
Counsel:I’m telling the Court that these people will be testify [sic] as
to his good character. They’ve known him since youth, since
he was a young person. And that the Court might have a
change of opinion at that point. That’s all I’m asking that
those witnesses be allowed to testify. And once they testify,
if you still feel the same way, that it’s 20 years, well, there’s
nothing we can do there.
 
The Court:Do you have them here today?
 
Counsel:No, Judge. I mean, I’m not trying to guess what you’re going
to do. I’m asking for a new trial and if you grant a new trial,
just give me enough time so I can either subpoena those
witnesses or ask them to come in voluntarily. My
understanding is that they will come in and testify on his good
character.

As we have noted, Judge Peca took the motion for new trial under advisement but did not sign a
written order. Consequently, the motion was overruled by operation of law.
Analysis of Issa and Its Progeny
            On appeal, Appellant does not challenge the denial of his motion for continuance or his
motion for new trial. Instead, he complains that he was deprived of due process when the court
adjourned the punishment phase of the revocation hearing without allowing him to call his witness
in mitigation of punishment. He directs our attention to Issa v. State, 826 S.W.2d 159
(Tex.Crim.App. 1992), and rightly so. There, the defendant complained that the judge who presided
at the revocation proceeding erred by immediately sentencing him without allowing any opportunity
to be heard on the issue of punishment. Defense counsel did not immediately object but later
complained in a motion for new trial that the trial judge immediately left the bench without giving
him the opportunity to object. Relying upon Duhart v. State


, the Court of Criminal Appeals held
“that when a trial court finds that an accused has committed a violation as alleged by the State and
adjudicates a previously deferred finding of guilt, the court must then conduct a second phase to
determine punishment.” Issa, 826 S.W.2d at 161. Recognizing that in most circumstances, the
failure to object would waive error, the court determined that the defendant had no opportunity to
object until after the court pronounced sentencing, recessed the court, and left the bench. 
Consequently, by timely filing a motion for new trial specifically raising the issue, error was
preserved. Id.
            The high court revisited and distinguished Issa in Pearson v. State, 994 S.W.2d 176
(Tex.Crim.App. 1999). During the revocation proceeding, the trial court asked Pearson the
following:
Anything you want to tell about what I ought to do on the -- let’s assume I revoke by
virtue of the allegations, anything you want to offer on what the term may or may not
be, should I continue you, some sort of alternative sanctions, if I do find the
allegations to be true, what term should I consider? Anything you want to offer on
that?

Pearson wanted to be restored to probation. The trial court revoked probation and imposed
sentencing. Dissatisfied with the results, the defendant appealed, contending he was not offered a
punishment hearing after the court ordered revocation. The Court of Criminal Appeals explained
that Issa presented such a rare circumstance that error was preserved by raising it in a motion for new
trial. For that reason, it was distinguishable:
However, appellant in the instant case not only had the opportunity to, but did present
punishment evidence. Appellant testified in his own behalf in regard to punishment,
urging the trial court to continue his probation and suggesting that his probation be
extended ‘a couple of years.’ It is immaterial that the opportunity to present evidence
came before the actual words of adjudication. The failure of counsel to either obtain
the attendance of the subpoenaed witnesses or to request a continuance to obtain their
attendance based on the repeated rescheduling of the hearing is not dispositive. 
Appellant had the opportunity to present evidence during the proceedings. That is
all that is required.

Pearson, 994 S.W.2d at 179; see also Hardeman v. State, 1 S.W.3d 689, 690-91 (Tex.Crim.App.
1999). Here, of course, Appellant sought a continuance which was denied by Judge Peca. The judge
was also aware that Appellant had one witness present but recessed the hearing without allowing the
witness to testify. For these reasons, the facts are surprisingly similar to those in Issa and necessitate
a finding that the trial court erred. We turn now to a harm analysis.
            Appellant duly filed a motion for new trial in which he complained of his inability to present 
evidence in mitigation of punishment. At the hearing, he admitted to the court that he had no
witnesses present and asked the court to grant a new trial on the revocation so he could bring the
witnesses in from New Mexico. He offered no explanation as to why the witnesses were not present
at the hearing. He tendered no witness affidavits as to their expected testimony. He offered a vague
reference that it is “[m]y understanding is that they will come in and testify on his good character.”
            To the extent he sought a new punishment hearing on yet another day, we conclude that the
Court of Criminal Appeals has straightforwardly rejected this argument. In Euler v. State, 218
S.W.3d 88 (Tex.Crim.App. 2007), the defendant presented testimony at the revocation hearing
concerning his neurologic condition.


 After finding that the defendant had violated his probation,
the court inquired whether he had anything to say before sentencing was imposed. Defense counsel
responded by asking the trial court to postpone imposition of sentence until after the Christmas
holidays, so that counsel would have time to gather evidence “as to some alternative” to the
punishment assessed. The trial court denied the request. In his motion for new trial, Euler
complained of the trial court’s refusal “to postpone imposition of punishment . . . to give counsel the
necessary time to prepare and present evidence that would dissuade the Court from ordering
[appellant’s] incarceration.” Euler, 218 S.W.3d at 90. He also referenced his desire to present more
extensive evidence concerning the nature and treatment of his neurological disorder. The trial court
denied the motion for new trial and the court of appeals affirmed. The Court of Criminal Appeals
also affirmed, holding:
Appellant’s argument is, in effect, that his right to due process required the trial court
to grant his request for another hearing on another day so that he could gather
evidence and show that incarceration was not the appropriate punishment in his case.
We are not persuaded by this argument, and we discern no error on the part of the
trial court. If appellant wanted an opportunity to present evidence and argument on
the question of punishment, it was incumbent upon him to ask for that opportunity
and to be ready to present such evidence and argument as soon as the trial court
announced its finding that he had violated the conditions of his probation. Part of
being prepared for a revocation hearing is being prepared to present evidence and
argument on the question of the proper disposition in the event that the trial court
finds that the conditions of probation have been violated.

Euler, 218 S.W.3d at 91.

            Although Appellant did not have the opportunity to call his lone witness at the punishment
phase of the revocation proceeding, he certainly had the opportunity to have all of his witnesses
testify at the hearing on the motion for new trial. Judge Peca specifically inquired whether the
witnesses were available. Counsel responded that he sought a new punishment hearing on another
day to secure the attendance of mitigation witnesses.
            While Appellant has demonstrated Issa error, he has failed to establish that error was
harmful. The trial court granted an evidentiary hearing on Appellant’s motion for new trial. He
offered neither evidence nor a reason why the witnesses were not in attendance. We thus conclude
the error is harmless and affirm the judgment of the trial court.

January 12, 2011
ANN CRAWFORD MCCLURE, Justice

Before McClure, J., Barajas, C.J. (Ret.), and Antcliff, Judge
Barajas, C.J. (Ret.)(Sitting by Assignment)
Antcliff, Judge (Sitting by Assignment)

(Publish)